CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 14, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STACY R. WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:23-cv-00056 |
| ) | |
| v. ) | Hon. Robert S. Ballou |
| ) | United States District Judge |
| DOMINION ENERGY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Stacy R. Washington alleges that her employer, Defendant Dominion Energy ("Dominion"), discriminated against her in violation of the Americans with Disabilities Act ("ADA") by holding her back in a training program following her cancer diagnosis and treatment. Washington adequately alleges discrimination and retaliation claims but fails to state a plausible claim for harassment under the ADA. Accordingly, I **DENY** Dominion's Motion for Judgment on the Pleadings as to Washington's discrimination and retaliation claims and **GRANT** Dominion's motion as to Washington's harassment claim.

I.  Background

Washington asserts claims for discrimination, harassment, and retaliation under the ADA.[1] She alleges that her boss at Dominion held her back in training after she took time off for cancer

---

[1] Washington's EEOC charge and civil cover sheet notes that her Complaint is filed under the ADA and Title VII. Dkts. 2-2, 18-1. But Washington's only allegation related to gender discrimination is her assertion that her supervisor was biased against her because she is a "*female* cancer patient." Dkt. 2 ¶ F.4 (emphasis added). Membership in a protected class alone is insufficient to state a Title VII claim. *See McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585–86 (4th Cir. 2015). Accordingly, to the extent it is asserted, Washington's Title VII claim is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(b)(ii).

treatments. When she complained to human resources, Washington alleges, Dominion caused her to fail training which, in turn, held her back from advancements in her job.

Washington was initially hired by Dominion Energy in 2015 as a Ground Worker. Dkt. 18 at 3. In January 2017, she joined Dominion's five-year multistep Overhead Line Worker training program. *Id.* Washington explained at the hearing on the present motion that each training step included a period of classroom training, followed by practical training, and finally 3–6 months of field work. She alleges that she began "Step 6 training" in October 2019. Dkt. 2 at ¶ F1. At the time, she requested that she be permitted to delay "Step 6" until February 2020 due to a recent cancer diagnosis. Her request was approved by an instructor, her supervisor, and her manager. *Id.*

When Washington returned to work in February 2020, she was told that she would not be permitted to attend "Step 6" in February, and that she would be able to resume training in September 2020. Dkt. 18-1 at 2. Washington alleges that she was held at Step 5 between February and September 2020, because her supervisor, Greg Browning, "who lost a wife to cervical cancer" was prejudiced against female cancer patients. Dkt. 2 at ¶ F.4.

On August 28, 2020, Washington filed an anonymous complaint about being held back in her training program with the HR "compliance line." *Id.* She filed a second complaint identifying herself on September 11, 2020. Six days later, on September 17, 2020, the Manager of Distribution Construction informed Washington that she failed "Step 5" training and would not be permitted to attend Step 6. *Id.* Washington alleges that this is the first time she was told that she failed Step 5.

In her EEOC charge, Washington alleged that the Manager of Distribution Construction informed her that she would not be permitted to attend Step 6 training because she missed too

2

much work. Washington asserts that this was "pretext as [the manager] was aware [she] was undergoing treatment and was on medical leave." *Id.* She alleges that the same manager also told her that she failed Step 5 because she "struggl[ed] with knots, struggl[ed] with a cross arm in an energized work zone, [had] to set up the bucket truck multiple times, and [failed to] provid[] [her] trainee book to leadership." *Id.* Washington requested proof of these incidences but was told that her evaluation was not up for discussion and that she had only two options: 1) be removed from the training program and "moved back to Groundman" or 2) "be failed for Step 5, attend another Step 5 [training] in January 2021 and be re-evaluated." She elected to repeat Step 5.

It is not clear from her pleadings whether Washington ultimately repeated Step 5. She explains in her opposition to Dominion's Motion for Judgment on the Pleadings that she suffered an injury in September 2020 that kept her out of work until 2021. She ultimately resigned from her position on September 21, 2021. Dkt. 2 at ¶ 3.

Washington filed a complaint with the EEOC on January 22, 2021. The investigator determined that Washington "was not subjected to different terms and conditions." Rather she "could not complete a training program satisfactorily because of her disability, was given additional time for training, could not pass a step and resigned." The investigator found that Washington continued to receive pay raises as if she had completed training, and thus, did not suffer an "adverse employment action." Dkt. 2-1.  Washington was awarded a right to sue letter on July 28, 2023. She filed this action on October 25, 2023, seeking compensatory and punitive damages.

## II. Legal Standard

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standard used when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter. . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court assumes that the allegations in the non-moving party's pleadings are true and construes all facts in the light most favorable to the non-moving party. *Id.* at 406.

The Fourth Circuit characterized the standard for evaluating motions for judgment on the pleadings pursuant to 12(c) in *Deutsche Bank Nat'l Trust Co. v. Fegely*:

> A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains, and that the movant is entitled to judgment as a matter of law.

767 F. App'x 582, 583 (4th Cir. 2019).

In addition, in reviewing a pro se plaintiff's pleadings, the court must construe her filings "liberally." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*

### III. Analysis

Dominion moves for judgment on the pleadings arguing that Washington failed to state a disability discrimination claim because being "held back in training" is not an "adverse employment action." Similarly, Dominion contends that Washington's retaliation claim fails because she does not allege facts sufficient to establish a causal connection between Washington's HR complaints and a materially adverse action. Dominion also argues that Washington's harassment claim fails because Dominion's decision to hold Washington in Step 5 training is not sufficiently "severe or pervasive" to constitute harassment. I find that Washington adequately alleges discrimination and retaliation under the ADA but fails to state a plausible harassment claim.

#### A. Washington Plausibly Alleges a Disability Discrimination Claim

Dominion moves for judgment on the pleadings as to Washington's disability discrimination claim on the ground that Washington failed to allege that the company took an adverse employment action against her. However, Dominion's argument relies on a flawed interpretation of "significant detrimental effect on employment status" and is undermined by the Supreme Court's recent ruling in *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024). Accordingly, I find that Washington has alleged an adverse employment action and plausibly states a claim for disability discrimination.

Disability discrimination claims require an allegation of an adverse employment action. *Craddock v. Lincoln Nat'l Life Ins.* Co., 533 F. App'x 333, 336 (4th Cir. 2013). Historically, the Fourth Circuit has required a plaintiff to show that the employer's action "had some significant detrimental effect" to establish an adverse employment action. *James v. Booz-Allen Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). Here, Dominion argues that its decision to hold

5

Washington in "Step 5" training was not an adverse employment action because Dominion increased Washington's pay as if she had proceeded through subsequent steps of the training' program. Dkt. 18 at 7. Dominion explains, "'the denial of the opportunity to attend training is 'generally' not an adverse employment action for purposes of a discrimination claim unless the denied training had a 'significant detrimental effect on [the] employment status." *Id.* (quoting *Claiborne v. Youngman*, 2020 WL 7246591, at *3 (E.D. Va. Dec. 9, 2020)). Absent an impact on Washington's salary, the company concludes, there is no significant detrimental effect on Washington's employment status and thus no adverse employment action. *Id.* at 8. But "significant detrimental effect on the employment status" is not limited to impacts on a plaintiff's salary. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (finding that a "tangible employment action, i.e., a significant change in employment status, such as discharge, demotion or undesirable reassignment" can establish liability under Title VII)[2]. Washington alleges that forcing her to repeat "Step 5" was "viewed as a demotion." Dkt. 20 at 4.[3] And, presumably, forcing Washington to complete a training step that she alleges she had already completed slowed her progress to a more senior or more desirable position. *See id.* (alleging that Washington would not be able to bid on a "union career progression Serviceman position.").

Moreover, the Supreme Court recently held in *Muldrow*[4] that a plaintiff alleging workplace discrimination need not establish that she suffered a "*significant* employment

---

[2] Although *Muldrew* involved claims asserted under Title VII, the Court's interpretation of "adverse employment actions" is applicable in the context of an ADA claim. *See Adams v. Anne Arundel Cnty. Pub. Sch.* 789 F.3d 422, 431 (4th Cir. 2015) (noting that the standard for "adverse employment actions" in the context of an ADA claim is analogous to the Title VII standard).

[3] These allegations are contained in Washington's opposition brief, Dkt. 20. As courts must construe a pro se plaintiff's pleadings liberally, I will credit these allegations as if they were included in the Complaint.

[4] *See supra* fn. 2.

disadvantage." 144 S. Ct. at 976–77. Instead, a plaintiff need only show that she suffered "some injury." *Id.* In *Muldrow*, plaintiff, a police officer, alleged that she was transferred out of an investigation unit because of her sex. Although her rank and pay remained the same, the Court found, based on the allegations below, that she had sufficiently plead injury:

> She was moved from a plainclothes job in a prestigious specialized division giving her substantial responsibility over priority investigations and frequent opportunity to work with police commanders. She was moved to a uniformed job supervising one district's patrol officers, in which she was less involved in high-visibility matters and primarily performed administrative work. Her schedule became less regular, often requiring her to work weekends; and she lost her take-home car.

*Id.* 977. Likewise, here, plaintiff has alleged "some injury" though not necessarily significant injury. Washington alleges that she was 1) forced to delay a training she needed to progress in her job, Dkt. 2 at ¶ F1, and 2) Dominion failed her in a training she had already completed, ¶ F3, which constituted a demotion and prevented her from bidding for a new position, Dkt. 20 at 4. Thus, I find that Washington has adequately alleged an adverse employment action, and judgment on the pleadings is not appropriate as to Washington's disability discrimination claim.

### B.     **Washington Plausibly Alleges a Retaliation Claim**

Dominion next argues that Washington failed to adequately plead a retaliation claim for two reasons: 1) she has not alleged a "causal connection" between Washington's protected activity and a "materially adverse action." i.e., there is no connection between Washington's HR complaint and the decision to fail her at Step 5; and 2) failing a training is not "materially adverse." I disagree and deny Dominion's motion for judgement on the pleadings as to Washington's retaliation claim.

First, Dominion argues that Washington cannot establish a "causal connection" because she was told that she would be required to repeat Step 5 training *before* she filed her HR complaint. Dkt. 18 at 17–18. Thus, Washington's HR complaint cannot have caused Dominion

7

to fail Step 5. *Id.* Dominion's argument misconstrues the pleadings. Washington alleges that she was told in February 2020 that she was "being held" in Step 5 training for the time being but would have an opportunity to complete Step 6 training later. *See* Dkt. 2 at ¶ F2. She asserts that she filed two HR complaints about the delays in training in August and September 2020. *See id.* at ¶ F2. One week after filing the second HR complaint, she was informed not only that her Step 6 training was delayed but also that she had failed Step 5 and would be required to repeat the training. *See id.* at ¶ F3; Dkt. 20 at 3–4. Thus, it is plausible that Dominion failed Washington in training *after* she filed her second HR complaint, and because she engaged in protected activity. *See Deutsche Bank Nat'l Trust*, 767 F. App'x at 583.

Second, Dominion argues that failing Washington at Step 5 training was not a "materially adverse action." Dkt. 18 at 10. In the context of a retaliation claim, a "materially adverse action" is an action that would dissuade "a reasonable employee…from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). It does not include "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Rather, a materially adverse action must cause "objectively significant harm." *Israelitt v. Enterprise Services LLC*, 78 F. 4th 647, 656 (4th Cir. 2023).

Dominion asserts that "being required to re-do Step 5 training" was not a "materially adverse action" because "the "denial of training opportunities" is not, as a matter of law, "materially adverse." Dkt. 18 at 10 (citing *Chapman v. Geithner*, 2012 WL 1533514, at *21-22 (E.D. Va. Apr. 30, 2012)). However, Dominion's argument mischaracterizes the adverse action. Requiring Washington to re-do Step 5 is not equivalent to denying "developmental work assignments," *id.*, or "refusal to authorize training classes," *Allen v. Napolitano*, 774 F.Supp.2d 186, 203–04 (D.D.C. 2021). Rather, Dominion's decision prevented Washington from advancing

8

to Step 6, which included different job responsibilities, and forced her to lose time repeating training she had already completed. Dkt. ¶¶ F.1, F.3. Additionally, failing a training step was viewed as a demotion. Dkt. 20 at 4.[5] Any of these actions could dissuade a "reasonable employee from making…a charge of discrimination." *See Burlington*, 548 U.S. at 68.

### C.     Washington Failed to Plead a Harassment Claim

Finally, Dominion argues that Washington fails to plead that the alleged harassment was "severe and pervasive," and thus, fails to state a claim for a hostile work environment under the ADA. Dkt. 18 at 8–9. I agree and grant Dominion's motion for judgment on the pleadings as to Washington's hostile work environment claim.

To establish a hostile work environment claim, an ADA plaintiff must allege, among other things, that the alleged harassment was "sufficiently severe or pervasive to alter a term, condition, or privilege of [her] employment. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). This requires a plaintiff to show that "she perceived—and that a reasonable person would perceive—the environment to be abusive or hostile." *Walker v. Mod-U-Kraf Homes,* LLC, 775 F.3d 202, 209 (4th Cir. 2014). Whether a reasonable person would have perceived the conduct as severe or pervasive "rests on a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22–23 (1993)).

Here, Washington alleges that she perceived the decision to hold her back in training as harassment but has not alleged facts sufficient to show that a reasonable person would have found the work environment to be abusive or hostile. There are no allegations that Washington

---

[5] *See supra* fn. 3.

9

was subject to verbal or physical abuse or that Washington's supervisors' conduct made it difficult to perform her day-to-day work. Accordingly, the Court grants Dominion's motion for judgment on the pleadings as to this claim.

### IV. Conclusion

For the reasons above, Dominion's Motion for Judgment on the Pleadings is **DENIED** as to Washington's claims for ADA discrimination and retaliation. Dominion's Motion for Judgment on the Pleadings is **GRANTED** as to Washington's hostile work environment claim.

Entered: August 14, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge