CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 27 2024

LAURA A. AUSTIN, CLERK
BY: /s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

STACEY R. WASHINGTON, pro se

    Plaintiff,

v.　　　　　　　　　　　　　　　　Civil Action No. 3:23-cv-00056-RSB-JCH

DOMINION ENERGY SERVICES, INC.

    Defendant,

### PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT

    The Plaintiff humbly requests, the Court to deny the Defendant's Motion for Judgement on the discrimination and retaliation pleadings, based on the following disputed material facts and evidence that support the Plaintiff's claim of discrimination and retaliation.

    The Plaintiff humbly requests, if the Court chooses to grant the Defendants Summary Judgement that attorney fees and costs are not awarded to the Defendant. As the Defendant has wasted Plaintiff's time during discovery; when Chad Mayse did not show for his July 1 Deposition, the Defendant delayed providing the Employee Working File (that once submitted only included negative remarks from 2021, leaving out all positive remarks and documentation from 2015 to 2021), and their unprofessional behavior. And most importantly that Washington has proven claim merit and has suffered tremendously with this issue.

#### Plaintiffs Statement of Disputed Facts

I.   **Disputed. The Program**

1. **Disputed.** Washington was hired on July 15, 2015 as a Groundman. Even though Groundman and Lineman Trainee are gender-based words they were Washingtons classifications. *Evidence:* Lineman Trainee materials, emails, and Step 1, 2, 3, 4 and 5 Field evaluations, Step 5 Failure notice, HR complaint, Documents in Initial Disclosures.

1

2. **Disputed.** The Dominion Energy Lineman Trainee Program that Washington was in was a 7-step program that occurred over 56 months or 4 years and 7 months. *Evidence:* Dominion Energy Lineman Training Program guide pg. 2 Program Description and pg. 8 Appendix C Lineman Training Program Process Map.

3. **Agreed.** "At the end of each step, the trainee's supervisor completes a Field Practice Evaluation.... If a trainee receives Two or more "needs improvement" scores on a FPE, the trainee automatically fails that step, ... and must repeat it." According to the Dominion Energy Training Program Guide, the **supervisor** is to go over the evaluation with the trainee and is to be providing feedback throughout the program. Instructors and field supervision are to be involved in "...needs and/or continuation in the training program." The Local 50 is to be notified of difficulty progressing. *Evidence*: Dominion Energy Lineman Training Program Guide.

4. **Disputed.** Although Step 5 covers "gloving" at a higher voltage, the Dominion Energy Voltage guidelines state that after **Step 2** they can work on "live energized work" secondaries and in **Step 3** a trainee can assist a Qualified Employee on Voltage from 0 to 19.9KV Single Phase, which is "live energized work". Steps 1, 2, 3, and 4 are the foundation of the program as trainees are learning **new** skills. Step 1 covers basic safety and climbing poles. Step 2 Basic lineman skills, terminating entrance cable which may require cover up at times on secondaries. Step 3 Single Phase Primary (the beginning of using "cover up" on energized primary wires). Step 4 Underground, using backhoe, mini excavator and entering manholes with air monitoring equipment. Step 5 cover up and "gloving" is building on skills the trainee has already been exposed to, although it is using some higher grade of "cover up" and higher voltage wire. *Evidence:* Dominion Energy Lineman Training Program Guide and Voltage Guidelines

II.     *Disputed.* **Washington Inadvertently Began Step 6 Training Though She Did Not Pass Step 5**

5. **Disputed.** Washington first successfully attended Step 5 training from Jan 28, 2019, to Feb 8, 2019. Washington attended Step 6 in 2019. Washington was

2

Supervised by Marty Bowman, who had over 10 years' experience as a lineman. Then Washington was managed by Chris Bjelland, a lineman with over 30 years' experience. Chad Mayse became Washington's Supervisor in early September 2019, less than 3 weeks before Washington was to attend Step 6. During Chad Mayses Deposition he confirmed he was never a lineman at Dominion Energy as he was unable to pass the entrance CAST (Construction and Skilled Trades) test that is required for the craft position of a Lineman. Washington was never informed she failed until Sept. 2020 (Retaliation act) a year after first attending Step 6 training and less than 2 weeks from Washington calling the Ethics and Compliance hotline (Protected activity).

Chad Mayse (nor Marty Bowman, Chris Bjelland or any of the training instructors as of Sept 2019) gave no indication to Washington that she was struggling, that Mayse was planning to fail Washington for Step 5 or that Washington would not be attending Step 6 training. (As per the Memorandum of Understanding between the Union and Dominion Energy, page 2 bullet 6,7, and 8). Per Edward Brownfields HR statement, Ryan Burtner commented union is typically notified ahead of time when a trainee is struggling, Brownfield stated it **was management's fault that the union was not notified**. Chad Mayse did not go over the Step 5 evaluation with Washington as is stated in the Lineman Training Program Guide. Mayse even stated during his Deposition that Washington Failed Step 5 twice, stating he did two evaluations on Washington yet only one was produced during Discovery, and no dates for when the evaluations can be noted, only a date in the course completed document of 9/9/20. _Evidence:_ Calendar, emails provided in Initial Disclosures, Reassign email, Lineman Training Program Guide pg. 6 Appendix A: Memorandum of Understanding (page 2, bullet 6,7, and 8), Edward Brownfields HR statement, Ryan Burtner Deposition, Step 5 Evaluation, Chad Mayse Deposition, Course completed document.

6. **Disputed.** "...an automatic mass email is sent to all trainees...[_instructors, supervisors, managers and other company training personnel_]...with details for the next step." This email was sent to Washingtons Supervisor Chad Mayse and

3

Manager Greg Browning with neither of them mentioning Washington struggling or plans to fail her for Step 5 as the Dominion Energy Lineman Training Program Guide Appendix A Memorandum of Understanding requires. *Evidence:* Trainee report date email provided in initial Disclosures, hotel receipt, car rental receipt, Step 5 Evaluation, HR Complaint, Dominion Energy Lineman Training Program Guide Appendix A Memorandum of Understanding.pg. 2 bullet 6,7, and 8.

7. **Agreed.** Ricky Snoddy included Washington on September 25, 2019, Step 6 email for training to start September 30, 2019.
   **Disputed.** The September 25, 2019, email was also sent to Supervisor Chad Mayse, Manager Greg Browning who would have been aware if Washington had (Defendants pretext) failed Step 5 or if she was struggling at that time. *Evidence:* email Sept. 25, 2019, Dominion Energy Lineman Program Guide (Memorandum of Understanding with Union), HR Complaint.

8. **Disputed.** 9/11 to 9/15/19 was FMLA intermittent that was denied, 9/16 FMLA intermittent was Approved, 9/17 to 10/02 was FMLA continuous Approved. *Evidence*: Tanasha Keel Investigation email involving correspondence from Sherri Goodline, Tonya James and Edward Brownfield, regarding Brownfield doing a time investigation on Washington March 2, 2020, Washingtons FMLA help email with Tonya James.

9. **Disputed.** During Step 6 training from Sept 30 to Oct 10, 2019, Washington missed multiple days due to cancer. Washington approached Instructor Ricky Snoddy about salvaging the class and different options. Snoddy stated one option would be to finish the week and come back the following week to go over what had been missed. Due to the recent cancer diagnosis and pending treatment Washington suggested attending a later Step 6. Snoddy looked up later Step 6 dates. Feb 17, 2020, was chosen. With Washington by his side, Snoddy then called his Manager Jeremy Phelps to get approval. Phelps verbally approved. Then Snoddy called Washingtons Supervisor Chad Mayse for approval. Mayse verbally approved. During the conversations no one mentioned anything about missing excessive days or being sent back to Washingtons supervisor for missing multiple days of training. Supervisor Chad Mayse,

4

Manager Greg Browning would have been aware if Chad Mayse failed Washington for Step 5 or if she was struggling by that time. *Evidence:* Reassign email from Ricky Snoddy, Washingtons HR Complaint, Jeremy Phelps deposition, Chad Mayse Deposition.

10. **Disputed.** Mayse did not state to Washington that she was struggling or had failed Step 5. In fact, he gave all indications that Washington **was** "advancing to Step 6." Supervisors are to go over evaluations with trainees and provide feedback "throughout the program". Instructors and Field supervision are to coordinate to meet "any additional needs and/or continuation in the training program." *Evidence:* HR Complaint, Reassign email from Ricky Snoddy dated 10/15/2019, Chad Mayse Deposition, hotel receipt and car rental receipt, Dominion Energy Lineman Training Program, Jeremy Phelps Deposition.

11. **Agreed.** Ricky Snoddy sent an email dated October 15, 2019, the email was also sent to Supervisor Chad Mayse, Manager Greg Browning, both would have been aware if Washington had failed Step 5 or if she was struggling at that time, further supporting Dominion Energy permitting a *pretext* activity. No mention of a Step 5 failure, which would require a trainee to repeat Step 5 **_before_** attending Step 6 training. *Evidence:* Reassign email, Dominion Energy Lineman Program Guide.

12. **Disputed.** Supervisors and Managers are responsible for notifying the trainee and other personnel about trainee struggles and failures. The Supervisors and Managers receive the training report emails so they would know if a trainee who they failed would be on the list. Washingtons rescheduled Step 6 training in Feb 2020 email from Ricky Snoddy on 10/15/15 was known to Supervisor Chad Mayse who gave verbal approval on the phone to Ricky Snoddy and Washington, before the Defendants pretext of Washington failing Step 5. *Evidence:* Dominion Energy Lineman Training Guide, pg. 6 Memorandum of Understanding (Company is to notify Local 50 of trainees that are struggling), Email 10/15/15/ From Instructor Ricky Snoddy, Ricky Snoddy reassign notes

III. *Disputed.* **Washingtons Management Team Decides to Hold Her in Step 5 due to Poor Performance and Lack of Sufficient On -the-Job Training**

5

13. **Disputed.** Washington was hospitalized from Dec 4 to 6, 2019 for cancer, returned to work Dec 9th, 2019. Washington used Vacation Jan 2 to 10, 2020. Washington was at work Jan 13, 14, 15, 17, 21,22 and for a few hours on the 27. Washington was sent home on Jan 27,2020 as Manager Greg Browning commented to Washington that the craft side does not have light duty unless its an on the job injury. Due to light duty letter request from Radiation/ Oncology doctor. *Evidence:* Calendar, Light Duty Doctor Letter, HR Complaint

    **Disputed.** Washington was on continuous FMLA leave from Jan 27 to Feb 16, 2020, due to cancer treatment that required an internal radiation device that necessitated light duty. On Jan 27 when Washington presented the light duty letter to Supervisor Chad Mayse Manager who then went to Greg Browning, Browning stated Washington could not do light duty, stating the craft side does not have light duty unless it's an on-the-job injury and sent Washington home. *Evidence:* Calendar, Light Duty Doctor Letter, HR complaint.

    **Disputed.** From Oct 15, 2019 to February 17, 2020 there are only 82 work days, there are 6 days of holidays. Washington used at least 8 Vacation days and possibly 1 Personal holiday. *Evidence:* Calendar

14. **Disputed.** Greg Browning stated during the fact-finding meeting on February 17,2020 that Greg Browning, Manager Edward Brownfield, HR rep. Tonya James and Richard Folsom Trainee Advocate were on the panel to decide to keep Washington help at Step 5 due to absences in the last few quarters. Washingtons absences were cancer and cancer treatment related.

    Per the Memorandum of Understanding between the Union and Dominion, "... field supervision is to be involved with continuation in the training program." As of the Feb 17,2020 date, not one of the above-mentioned people supervised Washington in the field. *Evidence:* Calendar (has training written down), Fact Finding meeting notes, Dominion Energy Lineman Training Program Guide (Memorandum of Understanding), HR Complaint.

    **Disputed.** Jan 30,2020 email, Washington was not included in this meeting and had no knowledge of it. Once again according to the Memorandum of Understanding between the Union and Dominion, the trainee is to be given

6

feedback throughout the program. *Evidence:* Calendar (has training written down), Fact Finding meeting notes, Dominion Energy Lineman Training Program Guide (Memorandum of Understanding), HR Complaint.

**Disputed.** Convoluted, being held in **Step 5** due to "...missing too much time in last training class.", time missed was due to cervical cancer. The last training class they refer to was **Step 6**, Sept to Oct 2019.  Per the Defendants pretext in #5  Chad Mayse did an evaluation failing Washington for Step 5 in Sept/ Oct 2019, a failure would require a trainee to repeat Step 5 training at the training center,  but now on Jan 30, 2020 they are having a meeting discussing Washington being held in Step 5 longer. Once again per the Memorandum of Understanding Washington was not notified, nor was the Union notified according to Edward Brownfields HR statement. *Evidence:* Calendar (has training written down), Fact Finding meeting notes, Dominion Energy Lineman Training Program Guide (Memorandum of Understanding), Jan 30, 2020 email, Edward Brownfield HR statement.

**Disputed.** Any gloving Washington did from Sept 2019 to Feb 2020 was in addition to the training from Feb 2019 to Sept 2019. *Evidence:* Calendar (has training written down), Fact Finding meeting notes, Dominion Energy Lineman Training Program Guide (Memorandum of Understanding).

**Disputed.** Washington kept her training details on her desk calendar and pocket calendar with more information, including job numbers, than the training log required. Washington first attended Step 5 in Feb of 2019 so all gloving activities on the calendar would have counted toward her gloving training.  *Evidence:* Calendar (has training written down).

15. **Disputed.** Washington was in survival mode, figured the calls were referencing FMLA letters that crossed in the mail, and it would be settled by the time she went back to work. *Evidence:* HR Complaint

16. **Disputed.** On February 17,2020 Washington reported to the training center in Richmond for Step 6 training. Instructor told Washington to call Richard Fossum Trainee Advocate, Fossum said to report back to Charlottesville to meet with Greg Browning. In the Fact-finding meeting notes, Browning stated Washington

7

was being held at Step 5 due to absences of "…60+ days within the last few quarters…". Absences that were due to Cervical cancer and Cervical cancer treatment. Washington asked Browning how she could be held for missed time when she was already approved to go to Step 6. Browning stated "…on the job training." There was no mention of being failed for Step 5 in 2019 as the Defendant pretext claims in #5. Per the Memorandum of Understanding, Washington was not notified of "…having difficulty progressing." Nor was the Union notified per Edward Brownfield's HR statement. *Evidence:* Edward Brownfields HR Investigation Statement, Fact-Finding meeting notes, Dominion Energy Lineman Training Program Guide (Memorandum of Understanding), Cancer treatment schedule, HR complaint.

**IV.     *Disputed.* Washington makes Vague complaints about "Gender Bias"**

17. **Agreed.** Washington was assertive in stating To Fossum not to call her that "hon". *Evidence*: HR Complaint, Feb 25 2020 statement.

18. **Disputed**. Washington was later approached by a service man, who once talking through the incident confirmed Washingtons learning mistake was insignificant, one that was easily rectified. There are two grounds on a transformer, a secondary ground strap and a grounding lug. The secondary ground strap was hooked to the neutral wire through the secondary x2 bushing. The outer can would not have been energized. To have insignificant learning mistakes taken to management while other male trainee mistakes were coached by a lineman, was a clear example of gender bias. *Evidence:* Email, Washingtons HR Complaint

19. **Disputed.** Washingtons concerns of gender bias were dismissed by Manager Greg Browning and Richard Fossum, even when they were given clear examples and scenarios. For example, insignificant learning mistakes being taken to management, Lineman not allowing Washington in the Double bucket with Lineman to train, Lineman not discussing the job with Washington while driving to job site, yet male trainees would be coached during drives to job sites and permitted in the double bucket with lineman. *Evidence:* Email, Washingtons HR Complaint.

20. **Disputed.** Washington called the Anonymous Ethics and Compliance hotline On or around August 26,2020. Although Washington did not identify herself it would be clear to anyone what her identity was by her female voice and considering there was only one female lineman trainee in the Charlottesville Office. *Evidence:* Initial Disclosures, Emails, Washingtons HR complaint.
21. **Disputed.** Washington identified herself within a short time frame by calling back with more information. *Evidence:* Initial Disclosures., Emails, Washingtons HR complaint.
22. **Disputed.** Washington identified herself within a short time frame by calling back with more information. Way before Dec 3, 2020 email to Nicole Baab. Washington let Baab know about the Step 5 Failure Sept 17,2020. *Evidence:* Initial Disclosures, Emails, Washingtons HR complaint.
23. **Disputed.** As stated previously, there was only one female trainee in the Charlottesville Office, it was easy for anyone to figure out Washington was the Anonymous caller. Female voice, calling about gender bias within the Charlottesville office that has a female trainee. Nicole Baab also stated her leadership team knew of the call details, as did the person that would take over the case as Baab was going out on Maternity leave soon. *Evidence:* Initial Disclosures, Emails, Washingtons HR complaint.
24. **Disputed.** Exhibit G is a statement from 1 Supervisor, Chad Mayse, no other supervisor or Manager signed. Protected activity anonymous call to Ethics and compliance hot line on or around *August 26, 2020*. *Evidence:* Initial Disclosures, Nicole Baab Emails, Washingtons HR complaint, Washington Deposition (leadership team of Nicole Baab), Defendants Exhibit G.
25. **Disputed.** Washington listed off activities as singular, but they covered multiple days and multiple jobs. Lineman's responsibility is to teach trainees, that includes going up in the aerial double bucket with a lineman to watch and participate, lineman not discussing details of job while driving to jobsite, happened multiple days and jobs, Lineman climbing pole when a trainee should be climbing. *Evidence:* Initial Disclosures, Emails, Washingtons HR complaint, Washington Deposition, Pat Couch Deposition Chris Whitworth HR Statement.

9

## V.    *Disputed.* Washingtons Poor Job Performance

26. **Disputed.** Washington had positive evaluations until the Step 5 Failure on Sept 17,2020.  The Defendants pretext comments are broad and vague comments that did not include statements from all of Washingtons Supervisors, including Supervisors Marty Bowman(10 yr lineman), Chris Bjelland (30 yr lineman), Bobby Dudley (30 yr lineman).
There were no details given on incidents where Washington did not take responsibility for her actions.
Washington would get frustrated with herself; others viewed this as Washington, a female, getting mad at them.
The one time that Washington recalls yelling down to lineman Pat Coach, was when after Couch kept yelling directions to her from the ground, she yelled down that he should be up in a bucket training her, not yelling things from the ground.
*Evidence:* Initial Disclosures, Emails, Washingtons HR complaint, Step 1,2,3,4 Step Evaluations, Supervisor report to changes, Washington Deposition.

27. **Disputed.** Exhibit E Deposition of Supervisor Chad Mayse, where he did not list "a whole lot more opportunities…" given to Washington. Only mentioning that if it was a man climbing the pole they would yell at him to get down if he looked like he didn't know what he was doing.  Exhibit S Deposition of Ryan Burtner, comments that were quoted by Defendant are, Burtner repeating things he had heard from others. Burtner has no firsthand factual basis for his words. *Evidence*: Deposition of Chad Mayse, Ryan Burtner Deposition.

28. **Disputed.** Exhibit R is emails from coworkers not Supervisors. (Please note the date on the emails in Exhibit R is Sept 10,2020 less than 1 week from Washingtons Step 5 Failure date of Sept 17,2020 and less than 2 weeks from Washingtons Protected Activity a *Causal Connection*.)  Pat Couch stated in his Deposition that he would not send an email unless asked.
Washingtons HR complaint clearly states she would ask lineman Pat Couch to get in the bucket and his response was always negative, "someone else already

asked", "no", or "you can go up by yourself". Now years later its stated Pat Couch had religious reasons for not training Washington, a female, in the double bucket. Even after Couch had requested Washington to be on his crew for her "strong work ethic" and sit beside Washington in close proximity at the crew table for years.

Washington had positive evaluations until the Step 5 Failure on Sept 17,2020. The comments the Defendant are quoting are broad and vague comments that did not include statements from all of Washingtons Supervisors, including Supervisors Marty Bowman(10 yr lineman), Chris Bjelland (30 yr lineman), Bobby Dudley (30 yr lineman).

There were no factual incidents, date, time, job location, etc.

Regarding Washington having to be retaught simple tasks...Each Lineman has ways they do things so trainees must learn each lineman's preferences for tasks and prepping material. Washington was looked down on for not knowing each lineman's preference and viewed as having to be retaught. *Evidence:* Defendants Exhibit R, Step 1,2,3,and 4 evaluations, Supervisor assignment sheets, Initial Disclosure Documents, Pat Couch Deposition, Pat Couch HR investigation statement, Washingtons HR Complaint.

29. **Disputed.** Washington was in a training program, of course there were learning mistakes, that is the whole point of a training program to learn from mistakes, from others and your own. Washington answered that "possibly" some mistakes were safety related. During Ryan Burtners Deposition Defendants Exhibit S, pg. 47 line 11 to 16, Burtner answered...

> "Yes" to Question "Since your time as a lineman and a serviceman, has--have you known of a trainee that had multiple safety violations and still completed the program?"

Washington was not asked to dispute any of her FPE's. However, during Supervisor Chad Mayses July 22, 2024, Deposition Washington asked Mayse if he had seen her tie a hot tie, which he had marked on the FPE as satisfactory, Mayse responded he had seen Washington do multiple hot ties. Looking at the comments from Supervisor Josh Luck in Washingtons supposed "Working

11

Employee file kept at the local office", it is stated that Washington had only done one hot tie which was under Josh Lucks supervision in 2021. Supervisors are to "review the [evaluation] results with the trainee." . *Evidence:* Initial Disclosures, Emails, Washingtons HR complaint, Step 5 Evaluation, Chad Mayse Deposition, Washingtons Working Employee File kept at local office, Ryan Burtner Deposition, Dominion Energy Lineman Program Guide pg.3, Memorandum of Understanding pg.2.

VI. *Disputed.* **Washington Fails Step 5 Because of Her Poor Performance**

30. **Disputed.** Defendants pretext activity. On Washingtons Step 5 failure paperwork there were questions Washington wrote that were never answered asking for specifics of the activities listed that failed her. No one to this date has provided Washington with any factual information for the incidents listed on the failure paperwork. No dates, no job numbers, no crew members or supervisors that saw the supposed activities. During Chad Mayse Deposition he stated he could not recall when asked about the events that failed Washington, even though he had done over 30 evaluations and had only failed one trainee, a female, Washington. Supervisors are to "review the [evaluation] results with the trainee." Evidence: Step 5 Failure Document, Chad Mayse Deposition, Dominion Energy Lineman Program Guide pg.3, Memorandum of Understanding, pg. 2.

31. **Disputed.** Convoluted. Washington did not choose to stay in Step 5 she was failed for Step 5. Washington could not stay in a Step she failed. Failing Step 5 meant Washington was a Step 4 trainee and would have to repeat Step 5 Training. *Evidence:* Step 5 Failure, Dominion Energy Lineman Training Program Guide

32. **Disputed.** Washington did not immediately shred her trainee book after the meeting, it was after work. While Browning was in his office talking with someone. *Evidence:* Defendants Sept 18,2020 Investigation Meeting Notes (DOM000243).

12

**33. Disputed.** The Lineman Trainee position filled a void left from loosing Washingtons youngest daughter, Hannaha, who required electricity for life. The Step 6 Feb 2020 training class was a goal at the finish line of enduring cervical cancer treatment. With no negative feedback throughout the training program from her Supervisor Chad Mayse or previous supervisors, and attending Step 6 training in 2019, Washington had no clue Mayse intended to fail her for Step 5. The Sept 17, 2020, Step 5 failure absolutely devasted Washington. While at home over the weekend, on Saturday Sept 19,2020, distraught and devasted Washington was numb to her surroundings and actions and was kicked by her horse resulting in a severe thigh injury involving 2 partial width muscle tears, a full-length bone bruise and hematoma, and a non-displaced tibial plateau fracture. *Evidence*: Doctor letter, Physical Therapy visit list, Return to work letter.

**34. Agreed.** Washington returned to work Feb 1, 2021. *Evidence*: Doctor letter, Physical Therapy visit list, Return to work letter.

**35. Disputed.** Washington attended Step 5 training in Richmond again from April 5 to the 16th, 2021. Washington felt she had no choice but to resign as things were not getting any better especially under Josh Lucks Supervision, who Washington had previously reported to HR. Josh Luck is the Supervisor who kept a daily log in 2021 on Washingtons activity in her Working Employee File. *Evidence:* Calander, HR Complaint, Resignation Letter, Washingtons Working Employee File kept at local office.

## VII. *Disputed.* Despite Not Passing Step 5, Dominion Still Paid Washington As If She Had

**36. Disputed.** The Overhead Lineman program is 7 steps. Washington progressed past Step 5 and attended Step 6 training in 2019 but due to cervical cancer and pending treatment Washington discussed with instructor Ricky Snoddy to salvage the class or attend a later Step 6 class. Washington was approved verbally, by phone call, by Jeremy Phelps and Chad Mayse to go to Step 6 in Feb 2020. Ricky Snoddy then followed up with an email on Oct. 15, 2019, to Snoddy's Manager Jeremy Phelps,

13

Washingtons Manager Greg Browning, Washingtons Supervisor Chad Mayse, Training scheduler Heather Stowers, and Washington, stating that Washington would be attending the Feb 2020 Step 6. None of the recipients stated anything about Washington being held in Step 5 due to absences, being sent back to supervisor, failed for Step 5 or Washington struggling with any skills.

Washington emailed Manager Greg Browning in June 2020, about her pay raises not progressing. Browning gave no indication that Washington was being held in Step 5 or that her raises were being held for any reason. Supervisor Chad Mayse gave Washington a phone number to payroll employee, Midge, to help with the pay raises discrepancy. Midge responded that Washingtons pay raises were in line until Dec 2019, no mention of raises being held for any specific reason, nor a held in Step 5 issue. Midge stated raises would be fixed and Washingtons Manager would go over it with her. Again, Raises were corrected with no mention of Washington being held in Step 5 or raises being held for any specific reason. *Evidence*: HR Complaint, Reassign email from Ricky Snoddy 10/15/2019, Greg Browning email about raises.

### Plaintiff's Additional Material Facts

1. Dominion Energy Denied providing Washington even the most minute disability accommodations.
    a. Denied waiving the certification deadline so FMLA paperwork/ Doctor certification could be submitted to cover more cancer and cancer treatment dates in 2019, stating "administering FML[A] consistently to all employees". Even after the FMLA management company, UNUM stated that only the company could waive the certification deadline. Resulting in absences counting negatively toward Washington. *Evidence*: Tanasha Keel HR Investigation email from Tonya James and Sherri Goodine, FMLA email to Tonya James from Washington, Edward Brownfield Time investigation email, Fact finding meeting notes, Written notice overtime availability.
    b. Greg Browning sent Washington home when internal cervical cancer treatment necessitated light duty, stating the company doesn't provide light duty to the craft side. *Evidence*: HR Complaint, FMLA leave for Jan 27 to Feb 16, 2020, Radiation Doctor letter for light duty.
    c. Greg Browning denied Washington a temporary reassignment to the underground crew during cancer treatment. Even though crew members could be traded amongst crews daily. *Evidence:* HR complaint, Fact finding meeting notes, Chad Mayse Deposition.

   d. Dominion did not provide light duty during Washingtons leg injury in 2020. *Evidence*: FMLA leave for Jan 27 to Feb 16, 2020, Orthopedic Doctor letter for light duty.

2. Dominion Energy allowed disability discrimination by Greg Browning and Chad Mayse.
   a. Chad Mayse writing "...not out sick, FMLA or Dep Care.", " 38% availability does not exceed" on Step 5 evaluation. *Evidence*: Step 5 Evaluation, HR Complaint, Chad Mayse Deposition.
   b. Being held in Step 5 in Feb 2020 due to absences that were from cancer and cancer treatment that occurred during the last quarters of 2019, Sept 11, to Feb 17, 2020. *Evidence*: Step 5 Evaluation, Fact finding meeting notes, HR complaint.
   c. During a meeting with Washington, Joey Stanley agreed with Washington when she stated Washington believed Greg Browning had a bias toward her because he lost his wife to cervical cancer. Stanley stated he agreed with Washington "based on the comments in her Working Employee file" kept at the local office. Washington was denied by Joey Stanley, HR Rep. Tonya James and Lawyer Eric Martin when she asked to view the file. Even after Washington stated to Eric Martin she had viewed the file twice before. When the file was finally produced during discovery, multiple documents Washington had seen before were not included in the file, only remarks from 2021. Washington was employed from 2015 to 2021. Dominion Energy was aware of an HR investigation, EEOC complaint and a Civil Action. The file would have been known to be preserved, if their response is such. *Evidence:* Emails to and from Tonya James, Eric Martin, and Washington.
3. Lineman Pat Couch stated in his HR investigation summary statement that he went to his supervisor Rob Staubs and requested Washington, "who had a strong work ethic" to be on his crew.
   a. Washington worked as much as possible while receiving cervical cancer treatments, further proving her strong work ethic.
   b. Washington apologized to Pat Couch for how she handled the "swamp anchor" incident, further proving her strong work ethic.
   c. Washingtons strong work ethic pushed her to endure many negative issues from Dominion Energy from 2019 before finally resigning on Sept 21, 2021, issues many reasonable people would have not endured.

## Conclusion

The Defendant has once again done their best to convolute the facts in their favor, but facts are facts. Washington has plead plausible claims of discrimination and retaliation and cited evidence to support her claims, supporting a denial of Dominion Energy's motion for summary judgement as **there are clearly disputed material facts.**

15

Washington has provided facts "...not "mere allegations or denials" proving that a material fact dispute exists. See *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U>S> 574, 586-87 (1986)."

As stated in the Opposition to the Defendants first Motion for Summary Judgement, materially adverse employment action cannot be denied. Specifically, when Supervisor Chad Mayse made the statement to Washington, he had filled out 3 Step 5 evaluations for Washington to attend Step 6. (Id. Document 5 HR complaint pg. 1., 2nd paragraph). When finally produced during discovery only 2 Step 5 Evaluations were presented, one having Josh Lucks name on it, Josh Luck became Washingtons supervisor when she returned to work in Feb 2021. Mayse made no mention of Washington struggling in her learning or failing that he intended to fail Washington for Step 5. Additionally on June 24, 2020. Chad Mayse notified Washington she would attend Step 6 training on Sept 21, 2020. A few days later Greg Browning stated to Washington that they were trying to get her into an earlier training session but if not, she would definitely attend Step 6 on Sept 21, 2020. (Id Document HR Complaint pg. 2, paragraph 6)

Washingtons job performance was satisfactory until she called the Ethics and Compliance line, per her supervisor's satisfactory remarks on Step 1,2,3, and 4 evaluations. All negative remarks that are documented about Washingtons unsatisfactory performance are **after** the Aug 2020 Protected activity complaint date. Which contributes to a *pretext* activity by Dominion Energy.

The evidence supports that Washington has "allege[d] facts sufficient to render elements of [her] claim plausible." *Whorley v Int'l Paper*, 620 F. Supp. 3d 434, 437 (W.D. Va2022). Being failed in a training Step that an employee has already completed is a "significant detrimental effect on [the] employment status." *Claiborne v. Youngman*, No. 3.19-cv113, 2020 WL 7246591 at 3*(E.D. Va Dec 9, 2020).

The factual evidence shows a direct "causal connection" and "temporal proximity" between the Plaintiff's protected activity of calling the anonymous Ethics and Compliance line, initiating a complaint on or around August 26, 2020, to the Retaliation (*pretext* of unsatisfactory performance) act of the Step 5 Failure on Sept 17, 2020.

16

Being failed for a training step after progressing past that step (with no indication of negative reviews) is a *severe adverse reaction*, seen as a demotion, loss of tenure, mentally damaging, and absolutely devastating to Washington as the training program filled a void left from her daughter, Hannaha's death (who required electricity for life). Attending Step 6 training was also a goal at the end of enduring external and internal cervical cancer treatment. After Step 6 training a trainee can bid on a serviceman position which is awarded based on seniority.

Dominion Energy exhibited disability discrimination against Washington not once but multiple times by not allowing Washington light duty work during cancer treatment and Washingtons severe leg injury. Dominion Energy cannot pick and choose which disability can have light duty.

All the above are clear, additional evidence of Dominion Energy's ongoing pervasive conduct.

The Plaintiff humbly requests the Defendants Motion for Summary Judgment be fully denied so that Washington may have a chance to receive some justice.

**Dated**: August 27, 2024

Respectfully submitted,

By: *Stacey R Washington* pro se

STACEY R. WASHINGTON, pro se
142 Berry Mountain Lane
Madison, VA 22727
Telephone (540) 325-7171
threesmyluv@yahoo.com

## Certificate of Service

I hereby certify that on the 27th day of September, I will file the foregoing with the Clerk of Court, and I hereby certify that I will mail these filings by U.S. mail to the Defendant's lawyer and a copy via electronic mail:

Neil S. Talegaonkar (VSB No. 44589)
Catrina C. Waltz (VSB No. 98446)
Kaufman & Canoles, P.C.
1021 East Cary Street, Suite 1400
Richmond, Virginia 23219
Telephone: (804) 771-5700
Facsimile: (888) 360-9092
nstalegeonkar@kaufcan.com
ccwaltz@kaufcan.com
Counsel for Dominion Energy Services, Inc.

By: *Stacey R. Washington* pro se
STACEY R. WASHINGTON, pro se
142 Berry Mountain Lane
Madison, VA 22727
Telephone (540) 325-7171
threesmyluv@yahoo.com