IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 08, 2024
LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
     DEPUTY CLERK

| | |
|---|---|
| **STACEY R. WASHINGTON,** ) | |
| ) | |
| ) | Civil Action No. 3:23-cv-00056 |
| **Plaintiff,** ) | |
| ) | **By: Hon. Robert S. Ballou** |
| v. ) | **United States District Judge** |
| ) | |
| **DOMINION ENERGY,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

The training to become a lineman with Dominion Energy is a multi-step and multi-year process. Plaintiff Stacey R. Washington qualified for Dominion's Lineman Training Program and was working through the steps when she developed cervical cancer. She then took needed time away from the lineman training program to receive treatment. She now alleges that Dominion held her back in Step 5 of the training program in violation of the Americans with Disabilities Act.  She complained to human resources about not advancing the program and gender discrimination against her, and thereafter, Dominion retaliated against her by failing her at Step 5. Because I find there is a genuine dispute of material fact as to whether Washington was held in Step 5 because of her disability, I **DENY** Dominion's motion for summary judgment as to Washington's ADA discrimination claim. However, because the record evidence shows that Washington's supervisors were not aware of her complaints to HR, I find that no reasonable factfinder could conclude that Dominion retaliated against Washington. Accordingly, I **GRANT** Dominion's motion for summary judgment as to Washington's retaliation claim.

## I. Procedural History

Washington filed a Complaint on October 25, 2023, asserting claims for disability and gender discrimination, harassment, and retaliation under the ADA and Title VII. Dominion filed a motion for judgment on the pleadings on March 7, 2024. The Court denied the motion in part and granted the motion in part dismissing Washington's Title VII claims and her claim for harassment.[1] Dkt. 33. Dominion moved for summary judgement on August 7, 2024, and the Court heard oral argument on the motion on September 25, 2024.

## II. Factual Background

Dominion hired Washington as a Groundman on July 15, 2015. She eventually joined Dominion Energy Lineman Trainee Program. A seven step program which takes at least four years and seven months to complete. At each successive step, trainees are given pay raises and increasing job responsibilities. Trainees are evaluated at the end of each step. If the trainee receives two or more "needs improvement" scores on the Field Practice Evaluation, "the trainee automatically fails that step…and must repeat it."

Washington completed Step 5 in Fall 2019 and was enrolled in Step 6 training. She attended two days of Step 6 training but was unable to complete the step because of her cancer diagnosis. Washington was rescheduled for Step 6 training in February 2020.

Ryan "Chad" Mayse, Washington's supervisor, submitted a declaration that he gave Washington a "Needs Improvement" rating on her Step 5 Field Practice Evaluation. Mayse acknowledges that training department never received this evaluation. He was later asked to

---

[1] The Court granted judgment on the pleadings as to Washington's Title VII claims and her hostile work environment claim after Dominion filed its motion for summary judgment. Accordingly, the Court will not address Dominion's arguments as to those claims here.

resubmit the evaluation. *Id.* ¶ 7. Mayse states "I later learned that because Ms. Washington had a "Needs Improvement" rating, she should not have been scheduled for Step 6 classroom training."

Washington disputes Mayse's characterization of her performance. She states that neither "Chad Mayse (nor Marty Bowman, Chris Bjelland or any of the training instructors as of Sept. 2019) gave [her] no indication…that she was struggling, that Mayse was planning to fail [her] for Step 5 or that [she] would not be attending Step 6 training." Washington points out that both she and her supervisors received several emails scheduling her for Step 6 training. Neither Mayse nor any other supervisor responded that Washington was not qualified for Step 6 because she failed Step 5.

Washington was frequently absent from work from September 11, 2019 to February 17, 2020 due to her cancer treatments. On January 30, 2020, while Washington was on leave, Greg Browning and other Dominion employees met to evaluate Washington's progress in the Program. The group determined that Washington would need to be "held in Step 5 due to missing to [sic] much time while in her last training class" and was unable to "get her gloving on the job training." Following the meeting, Browning tried to call Washington three times to tell her she was being held in Step 5. Washington did not return Browning's calls.

Washington reported for Step 6 training on February 17, 2020. When she arrived, she was called to a fact-finding meeting where she was told that she was being held in Step 5 due to the significant amount of on-the-job training she had missed. Washington purportedly asked, "how she could be held for missed time when she was already approved to go to Step 6."

On August 28, 2020, Washington made an "anonymous call to the company compliance line to file a report based on gender bias, etc…." She did not identify herself by name or as a female trainee in the Program. However, Washington asserts that "it would be clear to anyone

what her identity was by her female voice and considering there was only one female lineman trainee in the Charlottesville Office." On September 11, 2020, Washington called the compliance line again "to see what the companys [sic] response [to her original complaint] was."

On September 17, 2020, Washington was notified that she failed Step 5. The failure notice lists the areas in which Stacy received "Needs Improvement": 1) "sometimes Stacey questions how to set her bucket up in order to work without having to set bucket up a second time"; 2) "Stacey struggles knowing the proper procedure in hanging the cross arm in an energized condition without the guidance from a lineman and/or supervisor"; 3) "Stacey struggles a lot with understanding the different knots." Stacey added an employee statement to the notice:

> I would request to know who, dates and job duties that I have supposedly done these things or not done. I feel this is not accurate of my skills or time in the program. I have been told I was to go to Step 6 3 times first time a year ago why am I just now being told these things?

*Id.* Following the meeting, Washington shredded her training book.

On September 19, 2020, Washington took leave because of an off the job injury. Washington asserts that she was "distraught and devasted" by Dominion's decision to fail her and "was numb to her surroundings and actions and was kicked by her horse resulting in a severe thigh injury…."

On December 3, 2020, Washington emailed Nicole Baab, an HR employee, detailing the events surrounding the failure notice. She wrote, "I see a direct correlation to my complaint report on 8/28 and being failed for Step 5 on 9/17 especially since I have all ready [sic] attempted Step 6 in Oct. 2019." Baab responded on December 8, 2020:

> Let me reassure you again, there was no retaliation for you calling the compliance line. I know this for two reasons A) the allegations were anonymous and B) only

4

> the coordinator in Ethics and Compliance and I were involved. Your leader team was never made aware of any allegations.

Mayse reiterates in his declaration that "[n]either [he] nor any of Washington's supervisors or managers were aware of the fact that Washington made an alleged anonymous complaint on or about August 28, 2020…."

Washington returned to work on February 1, 2021. That afternoon, she attended an "Employment Decision Day" meeting regarding shredding her trainee book. Washington then attended Step 5 training in April 5, 2021 and continued in training until she resigned in September 2021. Even though Washington never moved past Step 5 training, Dominion increased her salary as if she had progressed on the same timeline as other individuals in her training class.

Washington filed this suit in October 2023 seeking $240,000—"2 yrs pay for lineman and $50,000 mental anguish"

### III. Legal Standard

#### A. Summary Judgment – Rule 56

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See*

*Glover v. Oppleman*, 178 F. Supp.2d 622, 631 (W.D. Va. 2001). Rather, the "nonmoving party must [] go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 709–10. The "mere existence of a scintilla of evidence" is insufficient to repel an "adequately supported summary judgment motion." *Anderson*, 477 U.S. at 252. Further, "conclusory allegations or denials, without more, are insufficient to preclude" summary judgment. *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2013).

In addition, the Court is "always obliged to construe liberally the contentions being pursued by pro se parties." *Sinclair v. Mobile 360, Inc.*, 417 Fed. Appx. 235, 243 (4th Cir. Mar. 3, 2011) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)). As such, "where 'the context…makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern.'" *Id.* (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278).

### B. *McDonnell-Douglas* Burden Shifting Framework

"Plaintiffs can prove their [ADA] claim by pointing to direct evidence of discrimination or, more commonly, by using the three-step analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Neal v. East Carolina University*, 53 F. 4th 130, 134–35 (4th Cir. 2022). "This burden-shifting analysis requires a plaintiff first to establish, by a preponderance of the evidence, a prima facie case of discrimination." *Id.* (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981)). "Once a plaintiff meets that initial burden, the burden shifts to the defendant to show that its decision was made 'for a legitimate, nondiscriminatory reason,' and if that hurdle is crossed, then the presumption of

discrimination is rebutted and the burden returns to the plaintiff to prove that [the employers] proffered reason was pretext for discrimination." *Id.*

### IV. Analysis

Dominion moves for summary judgment arguing that Washington fails to make a prima facie case of either discrimination or retaliation under the ADA.[2] I find that Washington has presented facts sufficient to support her claim of discrimination but has failed to offer support her retaliation claim.

#### A. Washington's Disability Discrimination Claim

"In order to make out a prima facie case of disparate treatment on the basis of her disability, [Washington] must demonstrate: (1) that she is within the ADA's protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations; and (4) that the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Christmas v. Arc of the Piedmont*, 2013 WL 718812, at *5 (W.D. Va. Feb. 27, 2013) (citing *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir.2001). Dominion concedes that Washington, as a cancer patient, is within an ADA protected class, but challenges Washington's showing as to each of the remaining elements.

---

[2] Dominion also asserts generally throughout its brief that because Washington's pay was increased as if she had progressed through subsequent training steps, she cannot have suffered discrimination or retaliation. *See e.g.*, Dkt. 29 at 1 ("This case is a classic example of 'no good deed goes unpunished'"). There is no legal basis for Dominion's argument, which is plainly contrary to longstanding precedent recognizing Title VII and ADA claims whether the alleged discrimination or retaliation the plaintiff's salary or not. *See e.g.*, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). To be sure, Washington's pay increases will make it difficult for her to prove that she suffered economic damages because of Dominion's conduct, but it does not preclude Washington's claims.

First, Dominion argues that Washington cannot satisfy the second element because she was not performing to Dominion's standards. I disagree. In support of its argument, Dominion cites the two "needs improvement" score on Washington's September 2020 evaluation, the amount of on-the-job training Washington missed from Fall 2019 to 2021, and Washington's failure to "adequately fill out her training book." *Id.* 13–14. But these examples are not relevant to Washington's discrimination claim. Washington asserts that she was discriminated against when she was improperly held in Step 5 in February 2020 *after* she had completed the required on-the-job training for Step 5 and *before* she received the two "needs improvement" scores. The only evidence that Washington's performance was subpar before February 2020 is Mayse's statement that he gave her a "needs improvement" on an evaluation that was not received by the training department. Dkt. 29-2. On the other hand, Washington cites to the positive evaluations she received for Steps 1–4, which demonstrate that her performance leading up to Step 5 was satisfactory. In light of this evidence, I find that there is a genuine dispute of material fact as to Washington's work performance prior to Spring 2019.

Second, Dominion argues that being held in Step 5 is not an adverse employment action. I disagree. In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court expanded the scope of "adverse employment action." Justice Kagan wrote in the context of a discrimination claim "[an employee] must show *some* harm respecting an identifiable term or condition of employment." *Id.* at 354 – 55 (emphasis added). However, she does "not have to show…that the harm incurred was significant. Or serious, or substantial or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Moreover, "[t]he terms or conditions phrase…is not used in the narrow contractual sense; it covers more than the economic or tangible." *Id.* Dominion contends that Washington does not

8

meet this low bar. It argues that she was "not left worse off —she remained in the same step of the Program and received a pay increase." Dkt. 29 at 15 (emphasis in original) (internal quotations omitted). But this argument misconstrues Washington's allegations. Citing emails showing that she was scheduled for Step 6 training, Washington argues that she was properly in Step 6. Dkt. 35 ¶¶ 10–12, 14. Accordingly, requiring her to stay in Step 5 was a move backwards, and thus an adverse employment action. Additionally, Washington alleges that being held in back in training step was "viewed as a demotion." This is precisely the kind of harm to prestige that the *Muldrow* Court concluded was an adverse employment action. *See* 601 U.S. at 351 – 52 (concluding that a transfer to a less prestigious division was an adverse employment action).

Third, Dominion argues that Washington cannot show that she was unlawfully discriminated against because she has not identified a non-disabled overhead line worker who received more favorable treatment. Dkt. 29 at 16. Again, I disagree. As an initial matter, an ADA plaintiff is "not required as a matter of law to point to a similarly situated…comparator in order to succeed" on a discrimination claim. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2022). Rather, the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

Here, Washington has offered evidence showing that she was held in Step 5 because she had cervical cancer. For example, emails following January 30 meeting expressly state that Washington would need to be "held in [S]tep 5 due to missing to [sic] much time while in her last training class." Dkt. 29-3. The parties agree that Washington was absent from class because she was receiving cancer treatment. Additionally, Washington was informed she was being held in Step 5 the very same day she returned from FMLA leave. Dkt. 29 at ¶ 16. This temporal

9

proximity alone is sufficient to raise a genuine dispute of material fact sufficient to survive summary judgment. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (finding that temporal proximity alone can create a genuine dispute to causation).

      Finally, Dominion argues that even assuming arguendo that Washington has stated a prima facie case of discrimination, her claim cannot survive summary judgment because "Dominion has proffered legitimate, non-discriminatory and non-retaliatory explanations for not progressing Washington to Step 6," and Washington has not demonstrated that these explanations were mere pretext. Dkt. 29 at 24. However, as discussed above, Dominion has not offered any evidence of a non-discriminatory reason Washington was held in Step 5 in <u>Spring 2020</u>. Although there is evidence that Washington performed poorly in the lead up to failing Step 5 in <u>Fall 2020,</u> the only evidence explaining why she was not initially permitted to proceed to Step 6 in Spring 2020 are emails stating that Washington missed too much "on the job training." Because Washington had already completed Step 5 training, this evidence supports an inference that Washington was held back for discriminatory reasons. Accordingly, Dominion has not introduced evidence sufficient to shift the burden to Washington, which would require her to demonstrate that Dominion's proffered explanations for holding her in Step 5 are mere pretext.

      Washington has offered sufficient evidence to create a genuine dispute of material facts as to each element of an ADA discrimination claim. Thus, I find that summary judgment is not appropriate as to the discrimination claim.

      B.    Washington's Retaliation Claim

      Dominion also moves for summary judgment on Washington's retaliation claim because she cannot establish a causal connection between her HR complaint and Dominion's decision to fail Washington at Step 5 in September 2020. Because Washington has no evidence that the

individuals who failed her at Step 5 were aware of her HR Complaints, I find that Washington has failed to demonstrate a causal connection between the two. Thus, summary judgment is appropriate as to the retaliation claim.[3]

"Three elements comprise a case for retaliation. A plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F. 4th 201, 212 (4th Cir. 2022). Here, Washington alleges that she complained to HR on August 28, 2020 and followed up on her complaint on September 11, 2020. Six days later, on September 17, 2020, Washington was told that she failed Step 5 training. She suggests that the temporal proximity between the complaint and the failure notice suggest a causal connection. Dominion counters that Washington's September 17, 2020 call to the company compliance line was anonymous, and that her managers, the individuals responsible for failing her in Step 5, did not know about the complaint. Dkt. 29-2; Dkt 29-3.

Temporal proximity alone is often sufficient to create a genuine dispute of material fact as to causation. *Haulbrook*, 252 F.3d at 706. Here, however, the uncontradicted evidence shows that Washington's supervisors were unaware of the September 11 HR complaint when they failed her at Step 5. It is axiomatic that an employee cannot be retaliated against if her employer is unaware of her protected activity. *See Strothers v. City of Laurel, MD*, 895 F.3d 317, 336 (4th Cir. 2018). To accept Washington's theory of retaliation the court would need to assume, despite

---

[3] Dominion also argues that the decision to fail Washington in Step 5 was not "materially adverse." The Court previously rejected this argument in its Memorandum Opinion Denying in Part and Granting in Part Defendant's Motion for Judgment on the Pleadings. Defendant has offered no new evidence on this issue in its motion for summary judgment. Accordingly, the Court will not revisit its prior ruling.

the uncontradicted evidence to the contrary, that not only did HR know her identity in September 2020 when she called the compliance line, but also that HR reported the complaint to her managers. This is too speculative to survive summary judgment. *Bandy*, 59 F.4th at 710 ("[C]onclusory allegations or denials, without more, are insufficient to preclude summary judgment.").[4]

Moreover, even assuming the temporal proximity between Washington's September 11, 2020 call to the compliance line was sufficient to establish a prima facie case of retaliation, Dominion has provided sufficient evidence that Washington was failed in Step 5 for a non-discriminatory reason—poor job performance. Dominion has introduced Washington's Fall 2020 Field Practice Evaluation, which shows that Washington received "Needs Improvement" scores in "Inspecting and Operating Aerial Lift," "Replacing Crossarms/Transferring Conductors (Energized)," and "Basic Rigging." Dkt. 29-4. Dominion has also provided emails from Washington's coworkers describing her performance in the Fall of 2020. *Id.* Among other things, Washington's coworkers' comments included the following:

> Stacey lacks a desire to progress and takes little if any initiative to do so.
>
> Mechanical aptitude is also a serious issue for Stacey.
>
> Stacey has a hard time taking responsibility for her own actions.
>
> [S]he will not make a good lineman and will likely get herself or someone else hurt.
>
> Stacy has shown that she has a hard time not only looking out for her own safety but also for others safety, we always talk about being your brothers

---

[4] Dominion also argues that Washington's calls to the compliance line were too vague to constitute protected activity under the ADA and were about gender bias, not disability. Dkt. 29 at 22. Dkt. 36 at 17. The Court need not decide whether either or both calls were protected activity because Washington has not demonstrated a causal connection between the calls and the decision to fail Washington in Step 5. Absent a causal connection, Washington's retaliation claim cannot survive summary judgment regardless of the content of the calls.

12

> keeper in our line of work but unfortunately you can only do that if you know, understand, and can retain the things that can be contributing factors on job sites and when working with electricity.
>
> From my own observation over the past year and a half, Stacey has not exhibited any enthusiasm to become a lineman. I personally have had to repeatedly explain to her things a groundman would know. For a trainee, this far along in the program this is unacceptable from my point of view.

*Id.* Dominion having offered evidence of a non-discriminatory reason for failing Washington in Step 5, the burden shifts back to Washington to show that her poor job performance was just a pretext. Washington has offered no such evidence. *See* Dkt. 35 ¶ 30. Accordingly, I grant Dominion's motion for summary judgment on Washington's retaliation claim.

V.   **Conclusion**

For all the reasons above, Dominion's motion for summary judgment is **DENIED** as to Washington's retaliation claim but **GRANTED** as to Washington's claim for retaliation.

Entered:  October 8, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge